NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOUIS E. VENEY, JR., | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 04-6144 (JBS) |
| v. | |
| ATLANTIC COUNTY JUSTICE FACILITY, et al., | <u>OPINION</u> |
| Defendants. | |

APPEARANCES:

Louis Ernest Veney, Jr.
No. 067656
Monmouth County Correctional Institution
1 Water Works Road
Freehold, New Jersey 07728
     Plaintiff <u>Pro Se</u>

Erin E. McLaughlin, Esq.
Thomas J. Decker, Esq.
DECKER & MAGAW
507 Westfield Avenue
Westfield, New Jersey 07090
     Attorneys for Defendant

**SIMANDLE**, District Judge:

    This matter is before the Court upon the motion by defendant Atlantic County Justice Facility for summary judgment pursuant to Rule 56(c), Fed. R. Civ. P.  This matter originates from a complaint filed by Plaintiff, Louis E. Veney, Jr. alleging that the medical prison staff at defendant, the Atlantic County Justice Facility, denied Plaintiff necessary medical care for

foot problems involving plantar warts he had while incarcerated in December 2004 and January 2005.[1]  For the reasons expressed below, the Defendant's motion for summary judgment will be granted.

**I.     BACKGROUND**

   **A.    Plaintiff's Arrest, Incarceration and Medical Treatment**

On December 4, 2004, Plaintiff Louis E. Veney, Jr. ("Plaintiff") was arrested and charged with various drug offenses.  (Compl. ¶ 4.)  Pursuant to his arrest, Plaintiff was sent to the Atlantic County Justice Facility ("ACJF").  (Id.) Plaintiff remained incarcerated at the ACJF from December 5, 2004 until sometime in late January 2005 when he was released on bail. (Id.)

On December 5, 2004, the medical staff at the ACJF took Plaintiff's medical history and conducted a medical assessment. (Health Evaluation-Atlantic County Justice Facility, dated 12/5/2004, Def.'s Br. at Ex. D.)  The Health Evaluation form stated that Plaintiff presented with a number of ailments, including asthma, diabetes, hypertension, depression and a history of drug and alcohol abuse.  (Id.)  During his nearly eight week incarceration at ACJF, Plaintiff was either assessed or treated by a member of ACJF's medical staff on numerous

---

[1] Plaintiff's complaint does not identify 42 U.S.C. § 1983 as the applicable statute, but the nature of the claim makes this cause of action appropriate.

occasions.  Specifically:

- On December 6, 2004, following an alleged suicide threat, Plaintiff was examined in order to determine if he was depressed. (Psychiatric/Psychological Progress Notes, Def.'s Br. at Ex. D.)  Also on December 6, 2001, Plaintiff's feet were examined and an ACJF staff member noted that Plaintiff had plantar warts[2] and potentially "gangrene." (CFG Health Systems, LLC's Interdisciplinary Progress Notes, Def.'s Br. at Ex. D.)  Plaintiff requested surgery and it was noted that he was to be housed in administrative segregation until seen by medical staff.  (Id.)

- On December 9, 2004, medical staff at the ACJF took a medical history and conducted a physical assessment of Plaintiff noting, among other things, for a podiatrist to "please [check] feet 'warts.'" (Medical History and Physical Assessment, dated 12/9/2004, Def.'s Br. at Ex. D.)

- Also on December 9, 2004, the ACJF medical staff conducted a medical screening of Plaintiff, noting that Plaintiff was not physically fit enough to participate in ACJF's "boot camp" or enter the prison's general population. (Medical Screening, dated 12/9/2004, Def.'s Br. at Ex. D)

- On December 10, 2004, the ACJF medical staff examined Plaintiff's feet noting "a few warts, thick callouses, plantar surfaces, but skin intact."  (Interdisciplinary Progress Notes, Def.'s Br. at Ex. D.)  The medical staff member ordered that Plaintiff be allowed to wear his own shoes. (Id.)

- Plaintiff was seen later that same day complaining of pain as a result of falling off his bed.  (Id.)  Plaintiff was given Tylenol and instructed to use ice to sooth sore areas. (Id.)

- On December 11, 2004, ACJF staff completed a form titled "Identification of Special Needs," noting that, due to Plaintiff's plantar warts, Plaintiff "may wear

---

[2] Plantar warts, or *verruca plantaris* is the "common wart occurring on the sole of the foot." Attorney's Medical Dictionary and Word Finder (Vol. 6 V-85).

3

>   own sneakers for plantar warts per Dr. Martin."
>   ("Identification of Special Needs" Form, Def.'s Br. at
>   Ex. D.)
>
> - On December 16 and again on December 19, 2004, Plaintiff was seen by medical staff after complaining again about his plantar warts. No new orders were given as the medical staff concluded that the staff's previous treatment orders were proper. (Interdisciplinary Progress Notes, Def.'s Br. at Ex. D.) According to the Interdisciplinary Progress Notes, Plaintiff was told that the ACJF "do[es] nothing for plantar[] warts." (Id.)
>
> - On January 3, 2005, the medical staff assessed Plaintiff at the ACJF's housing area because of foot pain. Again, the staff concluded that its previous treatment was proper. (Id.)
>
> - On January 5, 2005, following a review of Plaintiff's chart, the ACJF medical staff allowed Plaintiff to have plantar wart pads brought in from his home. (Id.)
>
> - On January 7, 2005, the ACJF's medical staff arranged for Plaintiff's feet to by x-rayed. The result of the x-ray was negative. (Id.)
>
> - On January 22, 2005, in response to additional complaints of foot pain, Plaintiff was examined by a member of the ACJF medical staff. (Interdisciplinary Progress Notes, Def.'s Br. at Ex. D.) The staff noted that there were "[n]o bleeding wounds" and that Plaintiff would be allowed to wear "plantar pads" that would be brought to the ACJF by Plaintiff's mother on January 24, 2005. The report also noted that Plaintiff refused to walk and he was transported from the medical area by wheelchair. (Id.)

Plaintiff was released from ACJF after his father posted bail in late January 2005. (Deposition of Louis E. Veney at 42, November 16, 2005, Def.'s Br. at Ex. A.)

    **B.  Plaintiff's Medical Background and Treatment After His Release**

Plaintiff complained of various foot ailments both before

4

and after his six-week incarceration at the ACJF.  In the months leading up to his December 5, 2004 arrest, Plaintiff presented at the Atlantic City Medical Center with complaints of pain in his feet and was diagnosed with plantar warts for which he was given a prescription for medication and literature on follow-up care and treatment.  (Veney Dep. Tr. 23-24.)  On November 21, 2004, Plaintiff sought treatment for the same issue at the Atlantic City Medical Center emergency room.[3]  (Medical Records, November 21, 2004 at Def. Ex. C.)  The emergency room treatment records note "edema and redness" of his feet.  (Id.)  Plaintiff states that he was scheduled for surgery on or around December 6, 2004, but there are no medical records evidencing the need for surgery or of a fungal infection.  (Def.'s Br. at Ex. C.)

Plaintiff testified that after his release, he was treated by a Dr. Barbuto.  (Veney Dep. Tr. at 54.)  Dr. Barbuto diagnosed Plaintiff as having a fungal infection rather than plantar warts, and told Plaintiff that he would need to "have the fungal infection cut out."  (Veney Dep. Tr. 42, 46.)  At a later date, Plaintiff appears to have received treatment from Southern Jersey Family Medical Centers, Inc.  (Medical records at Def. Ex. E.)

**C.   Procedural History**

On December 10, 2004 -- only six days after his

---

[3] Some of the medical records refer to the patient "Shawn Boston," an alias admittedly used by the Plaintiff.  (Veney Dep. Tr. at 7, 32 at Def. Ex. A.)

incarceration in the ACJF -- Plaintiff filed a Complaint alleging that he was in need of surgery on his feet and that "Atlantic County Jail ignores a lot of medical emergenc[ies]."  (Compl. ¶ 4.)  While not articulated as such, Plaintiff's claim is brought under 42 U.S.C. § 1983 for violation of Plaintiff's Eighth Amendment rights stemming from ACJF's denial of necessary medical care for his plantar warts.  The ACJF answered on April 22, 2005. By Order of U.S. Magistrate Judge Ann Marie Donio, discovery for this matter closed on November 30, 2005.  [Docket Item 12.]  The instant motion for summary judgment was filed by the ACJF on March 13, 2006, pursuant to Fed. R. Civ. P. 56. [Docket Item 20.] Plaintiff filed opposition in the form of a letter brief on March 20, 2006.

## II.   SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "[T]he nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Liberty Lobby, 477 U.S. at 255). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted) Summary judgment must be denied "if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed". Nathanson v. Medical College of Penn., 926 F.2d 1368, 1372 (3d Cir. 1991).

The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The non-moving party "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue. Fed. R. Civ. P. 56(e). Defendants must do more than rely only "upon bare assertions, conclusory allegations or

suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985) (citation omitted); see Liberty Lobby, 477 U.S. at 249-50.

**III. DISCUSSION**[4]

Plaintiff seeks recovery under 42 U.S.C. § 1983 for alleged deprivation of his Eighth Amendment rights as a result of improper treatment of his foot maladies while incarcerated at the ACJF. (Compl. at ¶ 4.) In order to successfully prove an Eighth Amendment violation, a prisoner must show that he was subjected to "cruel and unusual punishment." U.S. Const. Amend. VIII. It is well-settled that those actions which are "incompatible with the evolving standards of decency" or impose "unnecessary and wanton infliction of pain" violate the amendment. Estelle v.

---

[4] As a preliminary matter, the Court notes that Plaintiff, who is appearing pro se, has failed to submit a Statement of Material Facts pursuant to L. Civ. R. 56.1. In this District, "facts submitted in the statement of material facts, which remain uncontested by the opposing party are deemed admitted." Hill v. Algor, 85 F. Supp. 2d 391, 408 n. 26 (D.N.J. 2001); see also Montville Twp. v. Woodmont Builders, 2005 U.S. Dist. LEXIS 18079 (D.N.J. Aug. 12, 2005)(where plaintiff did not file Rule 56.1 statement, "the Court will accept as true [defendant's] uncontested statements of fact for the purpose of the ruling.") Other courts in this District have held that, where the non-moving party had not submitted a Rule 56.1 statement, the court treated facts in the moving party's Rule 56.1 statement as admitted "unless controverted in [the non-moving party's] briefs or contradicted by the evidence." Longoria v. New Jersey, 168 F. Supp. 2d 308, 312 n.1 (D.N.J. 2001).

Having received no Rule 56.1 Statement from Plaintiff and Plaintiff's opposition being devoid of a recitation of facts, all facts contained in Defendant's Rule 56.1 statement will be deemed admitted if supported by evidence.

Gamble, 429 U.S. 97, 102-03 (1976) (citations omitted); see Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 417 (3d Cir. 2000).

In Estelle, the Supreme Court interpreted this broad standard to mean that prison officials can be held liable for Eighth Amendment violations upon a showing that the officials exhibited "deliberate indifference to serious medical needs of prisoners."[5] Id. at 104. The standard enunciated in Estelle is two-pronged: "it requires deliberate indifference on the part of the prison officials and it requires the prisoner's medical needs to be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978).

### A. Deliberate Indifference

Deliberate indifference will only be found where "the official knows of and disregards an excessive risk to inmate health or safety." Id. at 837. Accordingly, deliberate indifference can be shown where "knowledge of the need for medical care is accompanied by the intentional refusal to provide that care, or where short of absolute denial, necessary medical treatment is delayed for non-medical reasons," as well as denial of "reasonable requests for medical treatment." Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993) (quoting Monmouth

---

[5] The Supreme Court concluded that "deliberate indifference" to serious medical needs of prisoners constituted the "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976).

9

County v. Lanzaro, 834 F.2d 326 (3d Cir. 1987)).  Prison authorities are allowed considerable latitude in the diagnosis and treatment of prisoners.  See Durmer, 991 F.2d at 67.  "Where a prisoner has received some medical attention and the dispute is over the adequacy of that treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." United States ex rel. Walker v. Fayette County, Pa., 599 F.2d 573, 575 n.2 (3d Cir. 1979)(quoting Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).  Only where a prison official has acted with deliberate indifference will those actions affront "evolving standards of decency."  Estelle, 429 U.S. at 106.  Indeed courts, have found deliberate indifference where a prisoner's medical needs were all but ignored.  See Andrews v. Camden County, 95 F. Supp. 2d 217 (D.N.J. 2000) (holding that there was issue of material fact that prison officials were deliberately indifferent where prisoner repeatedly complained of infected toothache which resulted in near-fatal sepsis for which he received no treatment.)

   Mere negligence on behalf of medical personnel, however, does not violate the Eighth Amendment.  Estelle, 429 U.S. at 106.  "As a result, decisions by prison medical staff relating to the exercise of professional judgment, even though they may constitute medical malpractice, are not violative of the Eighth

10

Amendment." Id. at 106; Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir.1993) (acknowledging that deliberate indifference claim requires that prisoner demonstrate "more than negligence"). Additionally, "mere disagreement as to proper medical treatment" is insufficient to establish deliberate indifference under the Eighth Amendment. Lanzaro, 834 F.2d at 346 (3d Cir.1987) (citation omitted).

This Court finds that, upon the factual record, no reasonable jury could find that ACJF was "deliberately indifferent." Prison records provided by the ACJF indicate that, upon arriving at the ACJF, staff at the ACJF screened Plaintiff, identified his foot ailment and that he was examined for medical issues related to his feet on at least eight occasions subsequent to his initial screening. The fact that Plaintiff suffered from plantar warts was documented on December 6, 9, 10, 11, 16, and 19, 2004 and again on January 3, 5 and 22. In one Plaintiff's medical assessments, he was seen by a podiatrist. In another assessment, x-rays were taken of his feet. The actions taken by the ACJF were to (1) examine Plaintiff's foot on multiple occasions, (2) keep Plaintiff out of the general prison population and excuse him from participating in the ACJF's "boot camp" program, (3) allow him to wear his own shoes, and (4) allow him to have over-the-counter wart pads brought from home.

It is clear then that the ACJF examined Plaintiff and

11

addressed Plaintiff's complaints of pain regarding his foot maladies. The Plaintiff disagrees with the approach taken by Defendant's medical personnel in treating his plantar warts, preferring instead that he should have received foot surgery rather than foot pads and being excused from regular physical activity in jail. Even if this course of treatment was not sufficiently intense, it is not possible for a reasonable factfinder to conclude that it was intended to cause unnecessary pain or risk to Plaintiff. Also, if the allegedly inadequate care was a result of a negligent error in medical judgment on the part of the ACJF medical staff, Plaintiff's claim under the Eighth Amendment fails.[6] See Durmer, 991 F.2d at 69. However, if the inadequate care was "deliberate," then Plaintiff has a viable claim. Id. Upon this record of eight medical visits and

---

[6] Furthermore, the Court must be reluctant to second guess medical decisions made by the prison medical staff. See Walker v. Fayette County, Pa., 599 F.2d at 575 ("Where...the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law"); Lanzaro, 834 F.2d at 46. There is at least some evidence that the medical staff made a medical determination that, based on Plaintiff's condition, no more intensive action was necessary (other than allowing Plaintiff to wear his own sneakers and bring wart pads from home). The Court notes that in the ACJF's Interdisciplinary Progress Notes from December 19, 2004, a member of the ACJF's staff noted that Plaintiff was told that the ACJF "do[es] nothing for plantar[] warts." (Interdisciplinary Progress Notes, Def.'s Br. at Ex. D.) Nothing in the record indicates that the treatment given was so outside the reasonable standard of care for chronic plantar warts that deliberate indifference could be inferred.

corrective measures over the 6-week period of incarceration, the circumstances do not suggest that the Defendant was indifferent to Plaintiff's needs, and the claim therefore fails.

### B.  Serious Medical Need

Second, Plaintiff must demonstrate that the ACJF ignored Plaintiff's serious medical needs.  "A medical need is 'serious,' in satisfaction of the second prong of the Estelle test, if it is '(1) one that has been diagnosed by a physician as requiring treatment or (2) one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir.1987) (quoting Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J. 1979), aff'd, 649 F.2d 860 (3d Cir. 1981)).

In light of the finding of lack of deliberate indifference, above, it will not be necessary to consider whether Plaintiff's plantar warts presented a serious medical need.

### III. CONCLUSION

For the above reasons, Defendant's motion for summary judgment will be granted.  The accompanying Order is entered.


| October 13, 2006 | s/ Jerome B. Simandle |
|---|---|
| DATE | JEROME B. SIMANDLE |
|  | United States District Judge |